# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER SWANSON,

                Plaintiff,

v.                                      Case No. 20-CV-1675

NANCY GARCIA, NANCY WHITE,
MICHELLE BURTON, and
JEFFREY MANLOVE, MD,

                Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Christopher Swanson, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Swanson was allowed to proceed on three claims under the Eighth Amendment for deliberate indifference to medical needs: (1) a claim against Nancy Garcia for performing surgeries on his infected toe instead of referring Swanson to a specialist (Claim 1); (2) a claim against Dr. Manlove for failing to ensure Swanson was provided with the appropriate amount of antibiotics to treat his infected toe (Claim 2); and (3) a claim against Nancy White and Michelle Burton for failing to ensure Swanson received proper follow-up care after his surgery and for delaying Swanson's follow-up appointment with the specialist after he had surgery on his toe (Claim 3). The defendants have moved for partial summary judgment on exhaustion grounds,

arguing that Swanson failed to exhaust his available administrative remedies for Claim 1, Claim 2 and the part of Claim 3 concerning ensuring Swanson received the proper follow-up care after his surgery. (ECF No. 51.) The motion is ready for a decision.[1]

1. **Summary Judgment Standard**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would

---

[1] The briefing schedule for this motion took a unique path. Swanson filed a preemptive motion arguing that he exhausted his administrative remedies (ECF No. 47) a month before the defendant's filed their motion for partial summary judgment. In a telephonic hearing held on March 15, 2021, the court stated that it would construe Swanson's motion as his response to the defendant's motion for partial summary judgment because Swanson indicated that his motion contained the necessary responsive evidence. (ECF No. 55 at 21:45-22:15.)

support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

*1.1 Exhaustion Standard*

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking

his grievance to the appropriate review board).

The United States Court of Appeals for the Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). An inmate can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

*1.2 Relevant Procedure for Exhausting Administrative Remedies*

Because Swanson submitted the relevant inmate complaints in 2015 and 2017, the 2014 version of the Wisconsin Administrative Code Chapter DOC 310 applies instead of the current version, which was amended in 2018. The Wisconsin Department of Corrections uses an inmate complaint review system "to afford inmates in institutions a process by which grievances may be expeditiously raised,

4

investigated, and decided." Wis. Admin. Code § DOC 310.01; § DOC 310.04(1). Under the inmate complaint review system, an inmate must "file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code § DOC 310.09(6). The complaint must "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e).

Once an inmate files a complaint, the Institution Complaint Examiner must review and acknowledge the complaint in writing within five working days of receipt of the complaint. Wis. Admin. Code § DOC 310.11(2). The complaint examiner then has three options—to return, reject, or accept the complaint. Wis. Admin. Code §§ DOC 310.7(2); 310.09(3); 310.11(4), (5). A complaint examiner returns the complaint when it doesn't meet the filing requirements outlined in Wis. Admin Code § DOC 310.09(1), which mandates that inmate complaints must be legible, signed, free of obscenities, and contain only one issue per complaint. Wis. Admin Code. §§ DOC 310.09(3); 310.07(2)(b). Additionally, a complaint examiner may return a complaint and direct an inmate to make an attempt to informally resolve the matter before filing the complaint. Wis. Admin. Code § DOC 310.09(4). A complaint examiner may reject a complaint for any one of the eight reasons listed in Wis. Admin. Code § DOC 310.11(5). If a complaint is rejected, an inmate may appeal the rejection to a reviewing authority, who examines only the basis for the rejection but not the substance of the complaint. Wis. Admin. Code § DOC 310.11(6). The reviewing authority's decision is final. *Id.*

When a complaint examiner accepts the complaint, he or she must "send a

5

recommendation to the appropriate reviewing authority within 20 working days from the date of acknowledgement." Wis. Admin. Code § DOC 310.11(11). If the reviewing authority then dismisses the complaint, the inmate has ten calendar days in which to appeal the dismissal to the Corrections Complaint Examiner. Wis. Admin. Code § DOC 310.13(1). The Corrections Complaint Examiner must acknowledge receipt of the appeal in writing within five working days. Wis. Admin. Code § DOC 310.13(4). The Corrections Complaint Examiner then has 35 working days from receipt of the appeal to recommend a decision to the Office of the DOC Secretary. Wis. Admin. Code § 310.13(6). The secretary then has ten working days following receipt of the recommendation to accept or reject the Correction Complaint Examiner's recommendation. Wis. Admin. Code § DOC 310.14(2). If an inmate does not hear about his appeal within 45 working days of the Corrections Complaint Examiner's receipt of the appeal, he may consider his administrative remedies to be exhausted. Wis. Admin. Code § DOC 310.14(3).

**2. Swanson's Attempts to Exhaust his Administrative Remedies**

Swanson filed two grievances that complained about the care he received for his toe—WCI-2015-3587 and WCI-2017-14186.

2.1. <u>Inmate Complaint WCI-2015-3587</u>

Swanson initially attempted to submit an inmate complaint that concerned the treatment of his toe on February 17, 2015. (ECF No. 60, ¶ 1.) The complaint examiner returned the complaint, citing Wis. Admin. Code § DOC 310.09(4), informing Swanson that he had an obligation to contact Health Services Manager

6

Schrubbe before filing an inmate complaint. (ECF No. 53-4 at 1.) Swanson was given the opportunity to fix the error and refile the complaint. (*Id.*)

On February 23, 2015, Swanson resubmitted his inmate complaint, which was accepted by the complaint examiner. (ECF No. 60, ¶ 3; ECF No. 53-2 at 6.) In the inmate complaint, Swanson alleged that he had been charged $7.50 twice for the same treatment of his toe. (ECF No. 53-2 at 6.) Swanson did not name any defendant or complain about the treatment he received. His complaint was limited to the charges he incurred for medical care.

The complaint examiner investigated the complaint, confirmed the charges were correct and appropriate, and dismissed the complaint. (ECF No. 60, ¶ 4.) The reviewing authority affirmed the dismissal on April 6, 2015. (*Id.*, ¶ 5.) There is no evidence in the record that Swanson appealed the reviewing authority's dismissal. (*Id.*, ¶ 6.)

No reasonable factfinder could conclude that Inmate Complaint WCI-2015-3587 demonstrates that Swanson exhausted his administrative remedies before filing claims under the Eighth Amendment for deliberate indifference to his medical needs. First, the substance of the complaint did not put Waupun on notice of any of the three claims that Swanson filed in this lawsuit. Wisconsin Administrative Code § DOC 310.09(1)(e) requires inmates to "clearly identify the issue" in their inmate complaints. The regulation does not elaborate on what "clearly" identifying the issue entails. The Seventh Circuit has held that, "[w]hen the applicable regulations provide little guidance regarding the required contents of a prison administrative

7

Case 2:20-cv-01675-WED   Filed 08/20/21   Page 7 of 12   Document 62

complaint, . . . an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). The inmate complaint did not have to detail the precise legal theory, but it still had to contain details that would put an institution on notice of the potential claim. *Tate v. Litscher*, Case No. 16-C-15043, 2018 WL 2100304 at *4 (E.D. Wis., May 5, 2018.) An inmate complaint will not satisfy the exhaustion requirement where it fails to name the defendants involved or omits details that describe key elements of a claim. *Schillinger*, 954 F.3d at 995.

Swanson's inmate complaint concerned only the fees he was charged for his medical care. It did not discuss the quality of his care, nor did it name any of the defendants. Thus, Inmate Complaint WCI-2015-3587 does not satisfy the exhaustion requirement.

### 2.1. Inmate Complaint WCI-2017-14186

The only other inmate complaint in the record that concerns Swanson's toe is WCI-2017-14186. (ECF No. 60, ¶¶ 7, 16.) Swanson initially filed the complaint on May 25, 2017, but it was returned because he did not sign the complaint and because he first needed to attempt to informally resolve the issue with the Health Services Manager. (*Id.*, ¶ 7; ECF No. 53-5 at 1.) Swanson was given an opportunity to fix the errors and resubmit the complaint. (ECF No. 53-5 at 1.)

Swanson resubmitted the complaint on June 5, 2017, which was accepted by the complaint examiner. (ECF No. 53-6 at 6.) In his complaint, Swanson alleged

that "H.S.U. failed to take care of me and making apontmint [*sic*] to go back to Madison." (*Id.*) Specifically, he stated that, after his surgeries at the specialist's office in Madison, Wisconsin, HSU staff kept failing to schedule the required follow-up appointments. Swanson gave an example, stating that the last time he saw the specialist, the specialist stated he wanted to see Swanson back within one month. Swanson explained that was over two months ago and he still had not been notified of an appointment. (*Id.*) Swanson also stated that he had been writing HSU regarding the lack of care since September 1, 2014. (*Id.*)

The complaint examiner investigated the complaint, spoke with defendant Burton, and looked in to the recommendation that Swanson was to have a follow-up appointment with the specialist within four weeks. (ECF No. 60, ¶ 10.) The institution acknowledged that there had been a delay in scheduling the appointment with the specialist. (*Id.*, ¶ 11.) The complaint examiner affirmed the inmate complaint, but considered the issue resolved because a follow-up appointment had since been scheduled. (*Id.*, ¶¶ 12, 13.) The reviewing authority accepted the affirmation of the complaint. (*Id.*, ¶ 14.) The defendants note that Swanson did not file any appeals of the reviewing authority's decision (*id.*, ¶ 16), which would make sense if the institution affirmed his complaint—there would be nothing for Swanson to appeal.

In his response materials Swanson included a letter he wrote on an interview request form to the Warden on September 5, 2016, that corroborates his assertion in his inmate complaint that for some time he has been informally trying to resolve

9

the lack of follow-up care with Health Services. (ECF No. 47-1 at 2.) In the letter, Swanson states that he had multiple infections because "of bad treatment and lack of follow up visits." (*Id.*) He also states that, after his last surgery in Madison, HSU left his stitches in and, as a result, his toe failed to heal properly. (*Id.*) Deputy Warden Sarah Cooper responded to Swanson's letter, stating, "I have spoken with Interim Health Services Manager White who has assured me your concerns are being followed up on. Future appointments have been made with the specialists to resolve the issue." (ECF No. 47-1 at 3.)

The inmate complaint, combined with the letter to the warden and subsequent response, indicate that Waupun was put on notice that Swanson alleged that after his surgeries he was getting inadequate follow-up care **and** that his follow-up appointments were being improperly delayed. While the inmate complaint does not specifically name White and Burton, it is clear he is talking about HSU management. Also, when the complaint examiner investigated the complaint, he spoke with Burton. (ECF No. 53-6 at 4.) And when Deputy Warden Cooper looked into Swanson's concerns, she spoke with White. (ECF No. 47-1 at 3.) Thus, both defendants were on notice that Swanson was unhappy with both the quality of his follow-up care and the delay in scheduling his follow-up appointments. Thus, Swanson exhausted his administrative remedies **as to both** parts of Claim 3. As a result, summary judgment is denied as to Claim 3.

However, neither the inmate complaint nor the letter to the warden discussed Garcia or Manlove. Nor did either mention his inability to obtain antibiotics. And

10

Case 2:20-cv-01675-WED Filed 08/20/21 Page 10 of 12 Document 62

while the inmate complaint stated that Swanson was "cut into 9 times" (ECF No. 53-6 at 6), it did not state that he took issue with that course of treatment. Also, there is no evidence in the record that Swanson filed any other inmate complaints about Garcia or Manlove. As such, he failed to exhaust his administrative remedies as to Claims 1 and 2. Therefore, summary judgment is granted in the defendants' favor on Claims 1 and 2. Because there are no remaining claims against Garcia or Manlove, they are dismissed.

### 3. Conclusion

A reasonable factfinder could conclude that Swanson exhausted his administrative remedies as to Claim 3 against White and Burton for failing to provide adequate follow-up care after his toe surgeries and for failing to timely schedule follow-up appointments. Therefore, summary judgment on exhaustion grounds as to Claim 3, is denied.

However, there is no evidence in the record that Swanson filed an inmate complaint relating to Claims 1 and 2 against Garcia and Manlove for the treatment they provided. Therefore, summary judgment on exhaustion grounds is granted as to those claims.

When a plaintiff brings a claim before exhausting his administrative remedies, the claim is premature. As such, Claims 1 and 2 are dismissed without prejudice. *Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020) ("A premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting his administrative remedies."). If Swanson is able to properly

11

exhaust his administrative remedies, he may refile a new lawsuit with those claims, subject the applicable statute of limitations.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 51) is **GRANTED** in part and **DENIED** in part. The Eighth Amendment deliberate indifference claims against Nancy Garcia and Dr. Manlove are **DISMISSED without prejudice.** The court will issue a separate amended scheduling order resetting the deadlines for discovery and dispositive motions at a later date.

**IT IS FURTHER ORDERED** that defendants Nancy Garcia and Dr. Manlove are **DISMISSED.**

Dated at Milwaukee, Wisconsin this 20th day of August, 2021.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge